1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FBS LACEY, LLC, a Washington limited
liability company,

                Plaintiff,

     v.

DOVER HOLDING, LLC, a New York
limited liability company registered to do
business in Washington,

                Defendant.

CASE NO. C07-5009BHS

ORDER DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

    This matter comes before the Court on the Defendant's Motion for Summary Judgment
(Dkt. 13), and the motions to strike contained in the response and reply (Dkts. 18 and 20). The
Court has considered the pleadings filed in support of and in opposition to the motion and the
remainder of the file herein and finds that matters raised by the motion are suitable for decision
without oral argument.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff FBS Lacey, LLC (hereinafter referred  to as "Lessee") is the tenant under a
commercial lease (hereinafter referred to as "the Commercial Lease") for the "commercial retail
building located at 604-606 Sleater-Kinney Road, City of Lacey, County of Thurston, State of
Washington, with an address of 604 Sleater-Kinney Road SE, Lacey, Washington 98503"
(hereinafter referred to as "the Property").  Dkt. 1-2 at 4.  Defendant, Dover Holding, LLC

1   (hereinafter referred to as "Lessor") is the owner and lessor of the Property under the

2   Commercial Lease.  *Id.*  Lessor and Lessee obtained their rights and obligations under the

3   Commercial Lease pursuant to the Consent to Assignment and Assumption of Lease and the

4   Assignment and Assumption Agreement and Declaration of Use Restriction, respectively.  Dkt.

5   1-6 at 9-15 and 1-7 at 1.

6       In 2005 the City of Lacey initiated a condemnation action that affected the Property.

7   Dkt. 1-2 at 7.  Lessor and Lessee retained separate and independent counsel to defend their

8   interests in the condemnation action. *Id*. at 5 and Dkt. 7 at 5.  On June 30, 2006, the Thurston

9   County Superior Court granted summary judgment in the condemnation action, holding that the

10  City of Lacey was not authorized to use its eminent domain powers over the Property, and

11  entered an order to that effect on July 13, 2006.  Dkt. 1-2 at 6.  As a result, the City abandoned

12  the condemnation proceeding over the Property.  *Id.* at 7.

13      Section 13(a) of the Commercial Lease, titled "Condemnation," contains a provision that

14  states in pertinent part, "Lessor shall be entitled to *participate* in any such proceedings at

15  *Lessee's expense*." Dkt. 1-3 at 7 (emphasis added). On May 27, 2005, Lessor requested that

16  Lessee "indemnify and hold harmless the Lessor from all losses including attorneys' fees and

17  costs." Dkt. 15-3.  Lessee responded on June 17, 2005 stating that "[Lessee] acknowledges that

18  Section 13 of [the Commercial Lease] provides that the Lessor . . . is entitled to participate in the

19  condemnation action proceedings at the expense of the Lessee." Dkt. 18-10 at 2.  In the same

20  correspondence, Lessee further noted that "Section 10 of the [Commercial] Lease indicates that

21  Lessee's obligation regarding legal fees is limited to reasonable legal fees and expenses." *Id.* at

22  3.  Counsel for Lessor responded on June 20, 2005 and stated, "The City of Lacey's actions are

23  impacting [the Property], triggering [Lessee's] duty to defend and indemnify [Lessor]." Dkt 18-

24  11 at 4.

25      Lessee made its first payment for Lessor's attorneys' fees in the amount of $2,633.63 for

26  work performed in May 2005, by check dated June 28, 2005.  Dkt. 18-13 at 4.  The check was

27  accompanied by a letter dated June 21, 2005 that contained a reservation of rights "to object to

28

1    any and all portions of your billings and seek a refund of fees paid in the event that it is

2    subsequently determined that the invoice included work which was not within the scope of

3    [Lessee's] obligation to [Lessor]." *Id.* at 2.  Lessee made a second payment of $3,107.68 for

4    work performed in June 2005 and was also accompanied by a letter that contained an identical

5    reservation of rights, questioned the reasonableness of the attorneys' fees, and discussed the

6    Lessee's inability to assess the reasonableness of the fees due to the lack of information provided

7    by the Lessor.  Dkt. 18-15.  Again, on August 9, 2005, Lessee corresponded with Lessor and

8    stated, "[Lessee] has not, as of this date, actually refused to pay any of your bills for time you

9    claim was incurred in the condemnation action, but simply wishes to make it clear that it

10   reserves the right to require, if appropriate, that [Lessor] prove that the fees were reasonable and

11   necessary." Dkt. 18-16 at 3.  Lessee continued to make payments directly to counsel for the

12   Lessor for work done through January 2006. Dkt. 21-19. On April 26, 2006, Lessee informed

13   Lessor that they would not be paying any further attorneys' fees until a determination could be

14   made regarding what fees were reasonable.  Dkt. 18-31 at 2.  Lessee further stated, "[Lessee] is

15   not refusing to pay legal bills.  It is simply refusing to pay them until a court determination on

16   reasonableness is issued." *Id.* All bills evidencing Lessor's attorneys' fees received by Lessee

17   were redacted of all information pertaining to the work performed until after Lessee gave notice

18   that they refused to pay before the reasonableness of the fees could be determined.  Dkt. 18-32 at

19   3.

20        On December 6, 2006, Lessor served its 10-Day Notice of Lease Default-Notice To Cure

21   Lease Defaults or Vacate Premises on Lessee. Dkt. 15- 49 at 3.  In the Notice of Lease Default,

22   Lessor demands payment of $266,200.53 within ten days of service or to vacate the Property.

23   Dkt. 15-48 at 2.  On December 16, 2006 Lessee filed its complaint in the Thurston County

24   Superior Court seeking protection from eviction. Dkt. 1-2.  The complaint alleges causes of

25   action "for declaratory judgment, injunction, breach of contract, business interference, and

26   monetary damages arising out of the Lease entered into, performed and related to real property

27

28

ORDER – 3

1   located in the City of Lacey, Thurston County, Washington." *Id.* at 2.  On January 9, 2007, the

2   Lessor removed the action to federal court. Dkt. 1.

3        The Lessor's Motion for Summary Judgment is currently pending before the Court. Dkt.

4   13.  Lessor has requested that the Court find as a matter of law that Lessee is in default under the

5   Commercial Lease for failure to pay any of Lessor's post-January 2006 attorneys' fees and costs

6   associated with the successful defense of the City of Lacey's condemnation action affecting the

7   Property, and as a result find that Lessor's attempt to terminate the lease is effective. Dkt. 13 at

8   2.

9   ## II.  SUMMARY JUDGMENT STANDARD

10       Summary judgment is proper only if the pleadings, depositions, answers to

11  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

12  genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

13  law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the

14  nonmoving party fails to make a sufficient showing on an essential element of a claim in the case

15  on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

16  323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could

17  not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v.*

18  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific,

19  significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P.

20  56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

21  supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

22  of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v.*

23  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

24       The determination of the existence of a material fact is often a close question. The court

25  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

26  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

27  *Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of

28

1   the nonmoving party only when the facts specifically attested by that party contradict facts

2   specifically attested by the moving party. The nonmoving party may not merely state that it will

3   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

4   to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

5   Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be

6   presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

7   ### III.  DISCUSSION

8   **A.    Motions to Strike**

9       Both Lessee's Motion to Strike Declaration of Joseph G. Ward and Lessor's Motion to

10  Strike Monroe Declaration are denied.  Neither argument presented in favor of the respective

11  motions is persuasive.  One of the factors that must be weighed by the court when interpreting a

12  contract is "the reasonableness of the respective interpretations advocated by the parties." *Berg*

13  *v. Hudesman*, 115 Wn.2d 657, 667 (1990).  While some of the statements contained in the

14  declarations subject to Lessor and Lessee's motions may be inadmissible and in some instances

15  should be considered argument of counsel, the Court is able to determine relevance and what

16  weight to impart to the arguments, declarations, and exhibits offered in support of and in

17  opposition to summary judgment.

18  **B.    Contract Interpretation Standard**

19      Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in

20  diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v.*

21  *Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). As the Washington Supreme Court has

22  noted, courts asked to enforce a contract may be called upon to either construct or interpret a

23  contract's terms. *Berg*, 115 Wn.2d at 663. Contract construction requires the Court to determine

24  the legal consequences that flow from a contract's terms. *Id*. at 663. Contract construction is a

25  purely legal question, and is therefore appropriate for resolution at the summary judgment stage.

26      Contract interpretation requires the Court to determine the meaning of a contract term

27  and the parties' intentions. *Id*. at 663.  Summary judgment is proper when interpreting an

28

1  unambiguous contract even if there is a dispute over the legal effect of a provision of the

2  contract.  *Mayer v. Pierce County Medical Bureau, Inc.,* 80 Wn. App. 416,  420 (1996).  "A

3  contract provision is ambiguous when its terms are uncertain or when its terms are capable of

4  being understood as having more than one meaning."  *Id.* at 421.  However, if it can be

5  reasonably avoided, ambiguity will not be read into the contract. *Id.*

6       The Court's review is generally limited to the contract itself, and parol or extrinsic

7  evidence is not admissible to add to, subtract from, vary, or contradict written contracts that are

8  valid, complete, unambiguous, and not affected by accident, fraud, or mistake. *Berg,* 115 Wn.2d

9  at 670. Washington courts use the "context rule" when interpreting contracts, whereby extrinsic

10 evidence is admissible as to the entire circumstances under which the contract was made, as an

11 aid in ascertaining the parties' intent. *Id*. at 667. Under the context rule, courts may consider

12 parol evidence to interpret the contract as it was written. *Id*. at 669.  In interpreting the contract

13 the Court is to look at "the contract as a whole, the subject matter of the contract, the subsequent

14 acts and conduct of the parties to the contract, and the reasonableness of the respective

15 interpretations advocated by the parties."  *Id.* at 667.

16 **C.    Interpretation of the terms "Participate at Lessee's Expense" in Section 13(a) of the
         Commercial Lease**

17
18        **1.     Contract Read as a Whole**

19        The Court must look at the contract as a whole when interpreting the intent of the parties.

20 *Berg,* 115 Wn.2d at 667.  Section 13(a) of the Commercial Lease titled "Condemnation" contains

21 a provision that states in pertinent part, "Lessor shall be entitled to *participate* in any such

22 proceedings at *Lessee's expense*." Dkt. 1-3 at 7 (emphasis added).  The majority of the

23 provisions of Section 13(a) pertain to Lessee's assignment of any "award or payment" from any

24 condemnation action to the Lessor. *Id.*  The final sentence of Section 13(a) is the only sentence

25 that provides procedures to be followed with regard to the Lessor's ability to participate and the

26 Lessee's obligation to bear the costs of such participation in any condemnation action.  The

27 Lessor and Lessee dispute the legal effect of the terms "participate . . . at Lessee's expense"

28 found in Section 13(a) of the Commercial Lease.

1    Other sections of the Commercial Lease provide further clarification when read in

2  conjunction with the last sentence of Section 13(a).  Section 10 requires that the Lessee "pay,

3  and to protect, indemnify and save harmless Lessor from and against any and all liabilities,

4  losses, damages, costs, and *expenses* (including all *reasonable* attorneys' fees and expenses of

5  Lessee and Lessor)." *Id.* at 3 (emphasis added).  Section 22(c) also makes reference to the

6  Lessee's obligation to pay Lessor's expenses and costs associated with legal action and twice

7  makes specific reference to the payment of "*reasonable attorneys' fees*."  When the payment of

8  attorneys' fees is contemplated by the Commercial Lease as part of the Lessee's obligation to

9  pay Lessor's expenses and costs, the Commercial Lease is unambiguous that these fees and costs

10  must be reasonable.

11    Washington law also implies a covenant of good faith and fair dealing in every contract.

12  *Ross v. Ticor Title Insurance Company,* 135 Wn. App. 182, 190 (2006); *Confederated Tribes*

13  *and Bands of the Yakima Indian Nation v. Baldrige,* 898 F. Supp. 1477 (W.D. Wash. 1995).  To

14  read the lease as requiring the payment of attorneys' fees and costs irrespective of their

15  reasonableness would contravene the implied covenant of good faith and fair dealing contained

16  in the Commercial Lease, and when read as a whole in conjunction with the other provisions of

17  the Commercial Lease, the court should find that the Lessee is required to pay only those fees

18  which are determined to be reasonable.

19    Furthermore, Section 20, entitled "Permitted Contests," states:

20    Lessee shall not be required to (i) pay . . . rent or charge referred to in
     paragraph 8(a), (ii) comply with any statute, law, rule, order, regulation or
21    ordinance referred to in paragraph 8(b) . . . so long as Lessee shall contest, in
     good faith and at its expense, the existence, the *amount or validity thereof* . . .
22    by appropriate proceedings . . . which shall operate during the pendency
     thereof to prevent (i) the collection of . . . rent or charge . . . so contested.

23  Dkt. 1-4 at 2 (emphasis added).  Section 8(a) refers to the payment of rent, additional rent, and

24  other expenses related to the Property.  Dkt. 1-3 at 1.  Section 8(b) refers to government action

25  that affects the property. *Id.* at 2.  Section 20 would thus apply to any condemnation action in

26  that the action affects the ownership, use, and occupancy of the Property and affords Lessee

27  specific unambiguous rights to challenge the action.  Section 20 also specifically and

28

ORDER – 7

unambiguously allows the Lessee to contest the payment of rent or additional rent, if it does so in good faith.  Thus, Section 20 of the Commercial Lease would apply to a dispute over the reasonableness of the Lessor's attorneys' fees to be paid as additional rent by the Lessee. Section 20 further states:

> Lessee will pay, and save Lessor harmless against, any and all losses, judgments, decrees and costs *(including all reasonable attorneys' fees and expenses)* in connection with any such contest and will, *promptly after the final settlement, compromise or determination of such contest, fully pay and discharge the amounts which shall be* levied, assessed, charged or imposed or be *determined to be payable* therein or in connection therewith.

*Id.* at 3 (emphasis added). When read in conjunction with Section 13(a) the Lessor is able to participate in any contest of a condemnation action, the costs of which, *including all reasonable attorneys' fees and expenses*, shall be borne by the Lessee.  If the reasonable amount of fees is in question, the Lessee has an unambiguous contractual right to contest the fees charged. Lessor's attorneys' fees will be promptly fully payable, as a cost accrued in connection with the contest of the condemnation action, once the amount of reasonable attorneys' fees to be paid is determined, but not before.

Additionally, Lessee and Lessor entered into the Commercial Lease in 1999 through assignment agreements. Dkt. 1-6 at 9-15 and 1-7 at 1.  As a consequence, in any action between Lessee and Lessor pursuant to Section 20(a) or any other section of the Commercial Lease containing a unilateral attorneys' fee provision, the attorneys' fee provision will apply bilaterally and shall be awarded to the prevailing party whether specified in the Commercial Lease or not.  RCW 4.84.330.

### 2.    Subsequent Acts and Conduct

The court can also look to the "subsequent acts and conduct of the parties to the contract" when interpreting the intent of the parties.  *Berg,* 115 Wn.2d at 667.  Upon commencement of the condemnation action by the City of Lacey, Lessor requested that Lessee indemnify it pursuant to the provisions of the Commercial Lease.  Dkt. 15-3 and 18-11 at 4. Under the provisions of the Commercial Lease this would require Lessee to pay *reasonable attorneys' fees and costs* for Lessor's participation in the condemnation action.  Lessee agreed

with this interpretation on several occasions, did in fact pay attorneys' fees and costs initially, and stated specifically in its notice of suspending payment of Lessor's attorneys' fees and costs that "[Lessee] is not refusing to pay legal bills.  It is simply refusing to pay them until a court determination on reasonableness is issued." Dkt. 18-31 at 2.  Thus Lessee's conduct indicated that Section 13(a) did require it to pay Lessor's reasonable attorneys' fees.

### 3. Reasonableness of Respective Interpretations

Finally, when interpreting a contract, the Court may look to the "reasonableness of the respective interpretations advocated by the parties." *Berg,* 115 Wn.2d at 667.  Lessor advocates that "Lessor's right to 'participate at Lessee's expense' means the direct and immediate payment of the [attorneys'] fees and condemnation costs as incurred by Lessor." Dkt. 13 at 17. Lessor further contends that this right to receive immediate payment of its attorneys' fees and costs must be made "without claim or offset." Dkt. 20 at 2.  Under the position advocated by the Lessor, Lessee is obligated to pay all attorneys' fees and costs, without regard to the reasonableness of the fees and costs, immediately and without set-off or risk of being in default of the Commercial Lease.

Lessee offers two interpretations of Section 13 of the Commercial Lease.  The first interpretation advocated by the Lessee is that "participate" means that Lessee must keep Lessor informed and allow Lessor to provide input. Dkt. 16 at 19.  The second interpretation advocated by Lessee, "and the one initially proffered by [Lessee], was that the term 'expenses' in Section 13(a) did include '*reasonable* attorney's fees, costs, and expenses.'" *Id.*

When interpreting the Commercial Lease as a whole, taking into account the implied covenant of good faith and fair dealing contained therein, and looking at the subsequent acts of the respective parties, the Court finds that the only reasonable interpretation of Section 13(a) of the Commercial Lease requires Lessee to pay the reasonable attorneys' fees and costs of the Lessor.  Lessee has contested the reasonableness of Lessor's attorneys' fees which it has a right to do pursuant to Section 20 of the Commercial Lease.  Section 20 requires Lessee to fully pay the contested amount once a final determination has been made.  Lessor's attorneys' fees have

ORDER – 9

not been determined to be reasonable despite the ability to submit the issue to the court that

presided over the condemnation action and is aware of all the relevant issues involved.  Once

these fees are determined, Lessor has a statutory right to receive its reasonable attorneys' fees

from the City of Lacey pursuant to RCW 8.25.075, or it may collect the fees from Lessee and

assign its statutory right to attorneys' fees to Lessee. Of course, it cannot double recover by

receiving payment from both Lessee and the City of Lacey, and the Lessor has not advocated

this position to the Court.  Dkts. 13 and 20.  Lessee should not be held to have breached the

Commercial Lease until it has been afforded the opportunity to pay Lessor's reasonable

attorneys' fees and costs in full once they are determined.

### IV. CONCLUSION

The terms of the Commercial Lease are unambiguous.  Lessee must pay the reasonable

attorneys' fees accrued in connection with its participation in the condemnation action instituted

by the City of Lacey.  Lessee is provided a procedure for contesting the unreasonableness of

fees levied against it pursuant to Section 20 of the Commercial Lease.  The remedy requested

on summary judgment by the Lessor is inconsistent with the provisions of the Commercial

Lease and cannot be granted.

Furthermore, even if the Commercial Lease did not provide an independent basis for the

denial of summary judgment, summary judgment would be improper at this time.  At the core of

the issues in the present litigation is whether or not the Lessor's requested attorneys' fees are

reasonable.  The materials submitted clearly demonstrate that there is a factual dispute as to

whether the incurred fees were duplicative and/or unnecessary.  The Court may not decide this

dispute through summary judgment.  Indeed, the Thurston County Superior Court is the best

forum to determine answers to these issues.

ORDER – 10

1

**V. ORDER**

2      Therefore, it is hereby

3      **ORDERED** that Lessor's Motion for Summary Judgment (Dkt. 13) is **DENIED**,

4 Lessee's Motion to Strike Declaration of Joseph G. Ward is **DENIED,** and Lessor's Motion to

5 Strike Monroe Declaration is **DENIED**.

6      DATED this 10th day of August, 2007.

7

8                              BENJAMIN H. SETTLE

9                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 11